UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
PERINI/O&G, A JOINT VENTURE,

        Plaintiff,

    v.

USIMINAS MECÂNICA S.A.

        Defendant.
---------------------------------------------------------------x

Case No. 12 CV 1931 (VB)


**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
<u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>**

AKERMAN LLP
666 Fifth Avenue, 20th Floor
New York, New York 10103
Tel.: (212) 880-3800
Fax: (212) 880-8965

AKERMAN LLP
750 9th Street, N.W., Suite 750
Washington, D.C. 20001
Tel.: (202) 393-6222
Fax: (202) 393-5959

*Attorneys for Defendant Usiminas Mecânica S.A.*

{28641140;3}

## TABLE OF CONTENTS

I. Counts 1, 3 and 4 of the Amended Complaint are time barred and must be dismissed. .................................................................................................................. 1

II. Count 2 of the Amended Complaint is time barred and must be dismissed. ....................... 1

    A. Section 9.04 is not incorporated by reference into the Purchase Order. .................. 1

        1. The restrictive principles concerning incorporation clauses apply to the Purchase Order. ................................................................................... 2

        2. Section 9.04 "Warranty of Construction" was not "part of the basis of the bargain." ................................................................................... 4

        3. The restrictive rule on incorporation clauses does not support incorporation. ................................................................................... 5

        4. The Purchase Order is unambiguous and a compete and exclusive statement of the Parties' agreement. ............................................................. 6

    B. UMSA is not a warrantor under Section 9.04 of the Prime Contract. .................... 7

    C. Any purported breach of a repair obligation attributable to UMSA accrued upon delivery of the OSD panels. ................................................................................... 7

III. The BAS warranty is not at issue in this action. .................................................................. 9

IV. UMSA is not estopped from asserting the statute of limitations. ....................................... 9

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Bast Hatfield, Inc. v. Joseph R. Wunderlich, Inc.*,
  910 N.Y.S.2d 256 (3d Dep't 2010) ................................................................................................5

*Coopervision, Inc. v. Intek Integration Tech., Inc.*,
  794 N.Y.S.2d 812 (N.Y. Sp. Ct. 2005) ...........................................................................................3

*De Dole v. Knoedler Gallery, LLC*,
  No. 12 Civ. 2313, 2013 WL 5452669 (S.D.N.Y. Sept. 30, 2013) ..............................................4, 5

*Di Giovanna v. Beth Israel Med. Ctr.*,
  651 F. Supp. 2d 193 (S.D.N.Y. 2009) .............................................................................................1

*Dionisio v. George De Rue Contractors, Inc.*,
  833 N.Y.S.2d 786 (2007) ..............................................................................................................10

*Ehret Magnesia Mfg. Co. v. Gothwaite*,
  149 F.2d 829 (D.C. Cir. 1945) ....................................................................................................5, 6

*Eskimo Pie Corp. v. Whitelawn Dairies, Inc.*,
  284 F. Supp. 987 (S.D.N.Y. 1968) ..............................................................................................2, 7

*Guerini Stone Co. v. P.J. Carlin Constr. Co.*,
  240 U.S. 264 (1916) .....................................................................................................................2, 4

*Happy Dack Trading Co., Ltd. v. Agro-Indus., Inc.*,
  602 F. Supp. 986 (S.D.N.Y. 1984) ..................................................................................................6

*Hunt Foods & Indus., Inc. v. Doliner*,
  270 N.Y.S.2d 937 (1st Dep't 1966) .................................................................................................7

*In re W.T. Grant Co. v. N & A Goldman, Co.*,
  1 B.R. 516 (Bankr. S.D.N.Y. 1979) ................................................................................................7

*J. Barabello & Sons v. Hausmann Indus., Inc.*,
  571 F. Supp. 333 (E.D.N.Y. 1983) ..................................................................................................2

*Keywell Corp. v. Weinstein*,
  33 F.3d 159 (2d Cir. 1994) ..............................................................................................................5

*Kraft v. Staten Island Boat Sales, Inc.*,
  715 F. Supp. 2d 464 (S.D.N.Y. 2010) .............................................................................................4

Case 7:12-cv-01931-VB   Document 61   Filed 05/21/14   Page 4 of 14

*Lodges 743 and 1746, Int'l Ass'n of Machinists and Aerospace Workers, AFL-CIO v. United Aircraft Corp.*,
  534 F.2d 422 (1975)..................................................................................................................3

*Long Island Lighting Co. v. IMO Industries, Inc.*,
  6 F.3d 876 (2d Cir. 1993)......................................................................................................8, 9

*Milau Associates, Inc. v. North Avenue Development Corp.*,
  42 N.Y.2d 482 (1977) .................................................................................................................5

*Norcast, S.AR.L. v. Castle Harlan, Inc.*,
  No. 12 Civ. 4973, 2014 WL 43492 (S.D.N.Y. Jan. 6, 2014).......................................................3

*Owens v. Patent Scaffolding Co. Div. of Harsco*,
  354 N.Y.S.2d 778.........................................................................................................................9

*Paragon Res., Inc. v. Nat'l Fuel Gas Distrib. Corp.*,
  723 F.2d 419 (5th Cir. 1984) .......................................................................................................6

*Potler v. MCP Facilities Corp.*,
  471 F. Supp. 1344 (E.D.N.Y. 1979) ............................................................................................7

*Ross v. Louise Wise Servs., Inc.*,
  868 N.E.2d 189 (N.Y. 2007).....................................................................................................10

*United States Steel Corp. v. Turner Constr. Co.*,
  560 F. Supp. 871 (S.D.N.Y. 1983) ..........................................................................................3, 4

**STATUTES**

N.Y. UCC Law § 1-102 ....................................................................................................................7

N.Y. UCC Law § 1-201 ....................................................................................................................7

N.Y. UCC Law § 1-205 ....................................................................................................................7

N.Y. UCC Law § 2-313 ....................................................................................................................4

N.Y. UCC Law § 2-725 ........................................................................................................1, 7, 8, 9

**OTHER AUTHORITIES**

1 White & Summers Uniform Commercial Code § 10.6 (6th ed. 2012) .........................................3

None of the arguments advanced by Plaintiff ("POG") in its Opposition to Usiminas Mecânica S.A.'s ("UMSA's") Motion for Summary Judgment (the "Motion") changes the simple fact that POG filed this action too late. UMSA has shown through undisputed admissible evidence and law that its Motion based on the statute of limitations should be granted.

**I.     Counts 1, 3 and 4 of the Amended Complaint are time barred and must be dismissed.**

POG failed to oppose UMSA's Motion with regard to POG's claims for breach of contract, breach of implied warranty and breach of the implied covenant of good faith and fair dealing. POG therefore concedes that such claims are time-barred pursuant to N.Y. UCC § 2-725, and must be dismissed. *See, e.g., Di Giovanna v. Beth Israel Med. Ctr.*, 651 F. Supp. 2d 193, 208, n. 108 (S.D.N.Y. 2009) (collecting cases supporting dismissal of abandoned claims).

**II.    Count 2 of the Amended Complaint is time barred and must be dismissed.**

POG alleges in Count 2 that UMSA breached an express warranty in the Purchase Order by furnishing OSD panels with noncompliant welds. (ECF No. 19, Am. Compl. ¶ 23). However, POG does not argue in its Opposition to the Motion, because it cannot, that the warranty terms on the reverse side of the POG Purchase Order implicate the future performance exception to the delivery rule under UCC § 2-725. Therefore, POG's breach of express warranty count must be dismissed to the extent such claim relies on the warranty in the Purchase Order.[1]

**A.     Section 9.04 is not incorporated by reference into the Purchase Order.**

Prime Contract Section 9.04 is a "Warranty of Construction" stating that it runs from the Substantial Completion date of the entire Project. Besides the fact that such warranty is not incorporated into the Purchase Order, and by its own terms inapplicable to UMSA, it is illogical

---

[1] POG does not allege in its Amended Complaint that UMSA breached any other warranty except for the specific warranty on the reverse side of the POG Purchase Order. (*See* ECF No. 19, Am. Compl. ¶¶ 12-14). POG now takes the position in its Opposition that there are other warranties provided for in the Prime Contract which bind UMSA because the Prime Contract was purportedly incorporated by reference into the Purchase Order.

{28641140;3}                                      1

to apply it to UMSA because UMSA's scope of work was limited to that of a fabricator and manufacturer. Under the Purchase Order, UMSA was not to provide construction services; it delivered the OSD panels to POG who hoisted and welded the OSD panels in place. Thus, it is inconsistent with the language of the Prime Contract to apply a "Warranty of Construction" to an entity that did not provide construction services. Also, the "Warranty of Construction" extends one-year beyond substantial completion of the Project. Any tie between UMSA's work and Substantial Completion of the Project is not supported by the Purchase Order.[2]

### 1. The restrictive principles concerning incorporation clauses apply to the Purchase Order.

POG tacitly concedes that a general incorporation by reference similar to the language used by POG will only serve to bind a subcontractor as to certain limited clauses concerning scope, quality, character, and manner of the work, and not be sufficient to incorporate each and every term of the prime contract into a subcontract. POG, however, offers the novel, but flawed argument that this principle is not applicable to subcontracts subject to New York's UCC. (ECF No. 58, Opp'n to Mot., p. 4). The decisions recognizing the limitation of a broad incorporation by reference provision make no such distinction. *See, e.g., Guerini Stone Co. v. P.J. Carlin Constr. Co.*, 240 U.S. 264, 277 (1916). This Court, as well as other courts, apply this restrictive principle to many forms of contracting, regardless of whether the contracts are also governed by the UCC. There is no New York case supporting the proposition asserted by POG.[3]

---

[2] Mr. Flynn's statement in Paragraph 11 of his affidavit regarding POG's intent should be disregarded as such statements are barred by the parol evidence rule. This Court cannot look to the "after-the-fact professed subjective intent . . . [but rather] their objective intent as manifested by their expressed words and deeds at the time." *J. Barabello & Sons v. Hausmann Indus., Inc.*, 571 F. Supp. 333, 339 (E.D.N.Y. 1983); *Eskimo Pie Corp. v. Whitelawn Dairies, Inc.*, 284 F. Supp. 987, 993-94 (S.D.N.Y. 1968) ("*[O]ral statements of the parties as to what they intended unambiguous language in an integrated document to mean are excluded by the parol evidence rule . . . .*") (emphasis added). The very purpose of the parol evidence rule is to avoid fraud that might be perpetrated if testimony as to subjective intent could replace the plain meaning of the parties' agreement. *Id.* Mr. Flynn offers his subjective interpretation in at least affidavit paragraphs 8, 11, 13, 26, 33, and 35. (*E.g.*, ECF No. 59, Flynn Aff.).

[3] In fact, courts applying New York law frequently apply this principle to situations not involving construction

This Court has applied this principle to contracts subject to New York's UCC. For example, in *United States Steel Corp. v. Turner Construction Co.*, 560 F. Supp. 871 (S.D.N.Y. 1983), U.S. Steel, a subcontractor, furnished, fabricated, delivered, and erected structural steel for a building in New York City. *Id.* at 872. Later, a dispute arose between it and the general contractor as to what terms were incorporated by reference from the prime contract into the subcontract agreement. *Id.* at 872-73. The subcontract contained a general incorporation by reference clause providing that the subcontractor would be bound to the owner and general contractor in the way that the general contractor was bound to the owner. *Id.*

Notwithstanding the general incorporation by reference language in the parties' agreement, this Court held that only certain specific clauses referenced applied to U.S. Steel. *Id.* at 873-74. The Court explained that:

> Had the parties intended Article II of the subcontract to incorporate all of the provisions of the prime contract … the express incorporation of Article 6 of the IBM General Conditions would not have been necessary. The express incorporation of this clause and the absence of any similar express provision concerning Article 11, suggests the parties did not intend to incorporate the forum selection clause into the subcontract, or that if Turner did so intend, it did not communicate its intention to U.S. Steel. *Id.*

Notably, the Court's decision did not reject the well-established principles concerning the limited operation of broad incorporation by reference terms in circumstances involving the sale of goods. Here, similar to *U.S. Steel*, the delivery of steel products involved an agreement subject to New York's UCC.[4] In *US Steel*, the Court readily applied the restrictive principle regarding broad incorporation by reference terms. It should do so here as well.

Similar to the agreement in *U.S. Steel*, POG expressly incorporated many specific

---

subcontracts. *E.g., Norcast, S.AR.L. v. Castle Harlan, Inc.*, No. 12 Civ. 4973, 2014 WL 43492, *1-5 (S.D.N.Y. Jan. 6, 2014) (purchase of corporation); *Coopervision, Inc. v. Intek Integration Tech., Inc.*, 794 N.Y.S.2d 812, 819-20 (N.Y. Sp. Ct. 2005) (software license agreement); *Lodges 743 and 1746, Int'l Ass'n of Machinists and Aerospace Workers, AFL-CIO v. United Aircraft Corp.*, 534 F.2d 422, 441 (1975) (collective bargaining agreement).

[4] New York's UCC would have applied to the contract at issue in *U.S. Steel* because in cases involving both the sale of goods and their installation, courts apply the UCC when the goods are the predominant factor. *See* 1 White & Summers Uniform Commercial Code § 10.6 (6th ed. 2012).

sections of the Prime Contract, both relating to scope and other clauses, into the Purchase Order. Had POG intended the Purchase Order to incorporate all of the provisions of the prime contract,[5] the express incorporation of specifications and general terms and conditions of the Prime Contract would not have been necessary. The express incorporation of at least twenty-two sections from the Structural Steel Specification,[6] as well as other general terms and conditions,[7] and the absence of an express incorporation of Section 9.04 demonstrates that the Parties did not intend to incorporate such section into the Purchase Order. *See United States Steel Corp.*, 560 F. Supp. at 873-74; *see also Guerini Stone Co.*, 240 U.S. at 277. POG knew how to incorporate specific clauses by reference; had it wished to incorporate Section 9.04, it would have done so.

## 2. Section 9.04 "Warranty of Construction" was not "part of the basis of the bargain."

POG incorrectly asserts that Section 9.04 applies to UMSA because such warranty was "part of the basis of the bargain." (ECF No. 58, Opp'n to Mot., pp.7-10). The "basis of the bargain" principle under UCC § 2-313 requires "an affirmation of fact or promise made by the seller to the buyer which relates to the goods," which then "becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." N.Y. UCC Law § 2-313(a). POG cannot assert that Section 9.04 was "part of the basis of the bargain" without first demonstrating that UMSA first made "an affirmation of fact or promise" to POG. *See* N.Y. UCC Law § 2-313(a); *Kraft v. Staten Island Boat Sales, Inc.*, 715 F. Supp. 2d 464, 472-73 (S.D.N.Y. 2010); *De Dole v. Knoedler Gallery, LLC,* No. 12 Civ. 2313, 2013 WL

---

[5] Mr. Flynn's statement in paragraph eight of his affidavit, that the Parties only specifically incorporated certain sections by reference from the Structural Steel Specification because of scope disputes on previous POG projects is contradicted by the Purchase Order. Such statement should be disregarded as it is parol evidence that it not admissible in this case, where there is no ambiguity in the contract documents. The Purchase Order incorporates by reference general terms and conditions relating to payment and performance bonds, which are unrelated to scope. (ECF No. 56, Gilmore Decl., Ex. 1, pp. 12-13).

[6] (*See* ECF No. 56, Gilmore Decl., Ex. 12, pp. 1-2).
[7] (*See* ECF No. 56, Gilmore Decl., Ex. 1, pp. 12-13).

5452669, *30 (S.D.N.Y. Sept. 30, 2013).  POG made no such allegation in its Complaint or any subsequent pleadings with this Court.  Section 9.04 was not incorporated by reference into the Purchase Order, and even if it was, POG was the only warrantor under Section 9.04, under what was clearly described in the agreement between TBTA and POG as a "Warranty of Construction".[8]  Warranty obligations imposed upon manufacturers, if any, appeared in the detailed specifications dealing with the individual products.

### 3. The restrictive rule on incorporation clauses does not support incorporation.

POG argues that the Purchase Order incorporates the warranty in Section 9.04 by reference because it goes to the scope, manner, and quality of the work to be performed.  This is not the case.  Specifications, schedules, and other similar items go to the scope, manner, and quality of the work.  *See, e.g., Bast Hatfield, Inc. v. Joseph R. Wunderlich, Inc.*, 910 N.Y.S.2d 256, 261 (3d Dep't 2010).  Warranties do not.  This Court should look to decisions concerning the incorporation of indemnity and no-damage-for-delay clauses — which do *not* go to scope, manner, and quality — because such clauses are analogous to general construction warranties in that they are all are risk-shifting provisions.  *See, e.g., Keywell Corp. v. Weinstein*, 33 F.3d 159, 164 (2d Cir. 1994) ("warranties . . . are often simply instruments for allocating risks . . .").

POG's reliance on *Milau Associates, Inc. v. North Avenue Development Corp.*, 42 N.Y.2d 482 (1977) is misplaced.  That case does not discuss incorporation by reference principles, New York's UCC, and makes no holding with regard to incorporation by reference of express warranties.  Similarly, *Ehret Magnesia Manufacturing Co. v. Gothwaite*, 149 F.2d 829 (D.C. Cir.

---

[8] POG's reliance on *Ainger* is misplaced.  In *Ainger*, the plaintiff attempted to escape its warranty obligations under a contract by arguing that the defendant did not rely on the warranty at issue.  476 F. Supp. at 1221.  UMSA makes no such argument because the warranty in Section 9.04 was not part of the Purchase Order and by its own terms does not apply to UMSA.  POG cannot make an argument with regard to "basis of the bargain" without first demonstrating that Section 9.04 was part of the Purchase Order and applicable to UMSA, which it is not.  *Id.* at 1225.

1945) is distinguishable because it involved a warranty related to steam insulation work contained in a specification under which a construction subcontractor assumed the insulation obligations of the general contractor to ensure the insulated pipe was "permanently waterproofed." *Id.* at 829-30. These requirements had a direct relation to the particular part of the work performed by the subcontractor that went to scope, manner, or quality in connection with the construction of a high pressure steam distribution system at Langley Field, Virginia. Here, if the Structural Steel Specification specifically identified in the Purchase Order contained an express warranty regarding the OSD Panels, similar to the requirements in *Ehret*, that warranty may have been enforceable, but that is not the situation presented in this case.

### 4. The Purchase Order is unambiguous and a compete and exclusive statement of the Parties' agreement.

POG's arguments concerning "consistent additional terms" are not applicable to an interpretation of the Purchase Order because the Purchase Order is not ambiguous. *See Paragon Res., Inc. v. Nat'l Fuel Gas Distrib. Corp.*, 723 F.2d 419, 420-22 (5th Cir. 1984) (applying New York law); *Happy Dack Trading Co., Ltd. v. Agro-Indus., Inc.*, 602 F. Supp. 986, 991-93 (S.D.N.Y. 1984). Because there is no ambiguity in the Purchase Order, this Court should not examine evidence of "consistent additional terms." This Court should also not accept evidence of contradictory terms under both the UCC and the common law of contracts.

The Purchase Order has an integration clause that provides, "This order, including the terms and conditions on the face and reverse side hereof, contains the complete and final agreement between Buyer and Seller . . . ."[9] Any evidence from Mr. Flynn's affidavit of his subjective intent regarding the Purchase Order, including his references to what he was "advised by [POG's] attorneys" is inadmissible and should be stricken. POG's authority regarding

---

[9] (ECF No. 56, Gilmore Decl., Ex. 1, p. 14). Mr. Flynn admits this in his affidavit. (ECF No. 59, Flynn Aff., ¶ 9).

"consistent additional terms" are also distinguishable from the present case.[10]

### B. UMSA is not a warrantor under Section 9.04 of the Prime Contract.

The "other circumstances" POG seeks to take into account, pursuant to N.Y. UCC §§ 1-201 & 205, i.e., course of dealing, course of performance, and usage of trade, are explicitly negated by the clear language of the Purchase Order that POG elected to make part of its standard purchase order, which provides, in pertinent part, that:

> *No course of prior dealings between the parties and no usage of trade shall be relevant to supplement or explain any term used in this agreement.* Acceptance or acquiescence in a *course of performance* rendered under this agreement *shall not* be relevant to determine the meaning of this agreement even though the acquiescing party has knowledge of the nature of the performance and opportunity for objection. (ECF No. 56, Gilmore Decl., Ex. 1, p. 14).

POG cannot now disregard its own contract terms and utilize UCC theories of contract interpretation that are precluded by the Purchase Order. *See* N.Y. UCC Law § 1-102(3). POG could have entered into any contract for the purchase of the OSD panels and chose to restrict the use of these concepts.[11] Without such UCC doctrines, the only way to interpret the Purchase Order, is based on the definitions set forth therein.[12]

### C. Any purported breach of a repair obligation attributable to UMSA accrued upon delivery of the OSD panels.

POG appears to argue that its breach of express warranty claim survives the Motion because certain language in the Purchase Order "is not a warranty accruing upon delivery under UCC § 2-725." (ECF No. 58, Opp'n to Mot., p. 20). POG's strained argument ignores the

---

[10] *Potler v. MCP Facilities Corp.*, 471 F. Supp. 1344, 1348-49 (E.D.N.Y. 1979) (ambiguous contract with no integration clause); *Hunt Foods & Indus., Inc. v. Doliner*, 270 N.Y.S.2d 937, 939-40 (1st Dep't 1966) (ambiguous contract with no integration clause); *In re W.T. Grant Co. v. N & A Goldman, Co.*, 1 B.R. 516, 519 (Bankr. S.D.N.Y. 1979) (incomplete agreement with no integration clause). Furthermore, UMSA did not need to disclaim the warranty in Section 9.04 because it was not incorporated into the Purchase Order and by its terms, does not apply to UMSA. Thus, POG's reliance on *Rite Fabrics, Inc.* and *Consarc Corp.* is misplaced.

[11] "Subsection (3) states affirmatively at the outset that freedom of contract is a principle of the Code: 'the effect' of its provisions may be varied by 'agreement.'" Official Comment 2 to UCC § 1-102.

[12] POG's reliance on *Lion Oil Trading & Transportation, Inc.*, *Eskimo Pie Corp. v. Whitelawn Dairies, Inc.*, and *Songbird Jet Ltd., Inc. v. Amax Inc.* is misplaced as those cases concern the interpretation of contracts through course of dealing, course of performance, and usage of trade. The Purchase Order prohibits such an interpretation.

unique terms at issue in *Long Island Lighting Co. v. IMO Industries, Inc.*, 6 F.3d 876 (2d Cir. 1993).  Although not part of POG's Amended Complaint, a claim for costs related to the repair language in the Purchase Order accrued upon delivery of the panels, not sometime thereafter.[13]

Ignoring the explicit language of UCC § 2-725, POG contends that its claim for the "cost of correcting non-conforming conditions caused by the fabricator", did not accrue until non-conforming conditions in the OSD panels appeared in May of 2007.  POG states that because "such clause is more in the nature of a repair and replacement obligation" that breach of it could not accrue until after installation of the product and after it purportedly failed to perform.

POG's reliance on *Long Island Lighting* is misplaced because the clause in that case differed substantially and materially from the clause in the Purchase Order.  There, an electric utility sued a manufacturer for, among other things, a breach of a contractual provision, which stated: if "the equipment fails to achieve the warranted performance *in place*, . . . [the defendant] shall make such adjustments or modifications to enable the equipment to achieve the warranted performance."  *Id.* at 888 (emphasis added).  Focusing on the "in place" language, the court found that there was an exception to the delivery rule and that the statute of limitations accrued at some point after delivery because the contract stated that the manufacturer promised to repair equipment if it failed "in place" and that a "natural reading of the contract was that 'in place' referred to when the Generators were installed . . . [and] the Generators failed to perform 'in place' sometime after their initial installation in the fall of 1981."  *Id.* at 890.  Unlike the POG Purchase Order terms, the *Long Island Lighting* contract also provided that the repair obligation would extend one year from the initial operation of the plant.  *Id.*

Despite POG's assertions, any repair or replacement obligation that arguably exists *is in*

---

[13] The Amended Complaint in this matter does not allege that UMSA breached the language of the Purchase Order that POG argues in its Opposition.  (*See* ECF No. 19, Am. Compl. ¶¶ 17-20).

*fact an express warranty*, subject to N.Y. UCC Law § 2-725(2), any breach of which occurs upon delivery.[14] *Long Island Lighting* is also distinguishable because to the extent UMSA had a repair or replacement obligation, it did not contain any language that such obligation would begin once the OSD Panels were *in place*. Therefore, accrual of such an obligation began upon delivery. N.Y. UCC Law § 2-725. The Purchase Order also does not refer to a specific period such that the future performance exception to the delivery rule would apply. As such, there is no reason that the baseline rule that POG's cause of action accrued upon delivery should be varied.

**III.     The BAS warranty is not at issue in this action.**

In the Opposition, POG argues that Count 2 must survive because POG"s claims include claims for repair and replacement of the BAS product. (ECF No. 58, Opp'n to Mot., pp. 3, 21). The purported delamination of the BAS product has nothing to do with the weld cracks at issue. Simply put, repairs because of delaminated BAS are not an issue in the Amended Complaint: there are no allegations relating to the BAS, and the alleged damages only have to do with damages "to inspect the welds and repair the cracks in an amount to be proven at trial," not with BAS in any way. (ECF No. 19, Am. Compl. ¶¶ 20, 24, 28, 29).

**IV.     UMSA is not estopped from asserting the statute of limitations.**

POG's equitable estoppel argument is without merit. POG knew about an impending statute of limitations deadline and attempted to enter into a tolling agreement with UMSA, which UMSA declined. Mr. Flynn, POG's corporate representative, testified in deposition that he did not recall ever hearing that UMSA asked Perini to hold off filing suit against UMSA. (Gilmore Declaration attached hereto ("Gilmore Decl."), Ex. 3, Flynn Dep. Tr. 368:12-19). Mr. Flynn also testified that UMSA refused to sign a tolling agreement requested by POG to toll the statute

---

[14] *Long Island Lighting* stands for the proposition that "a promise to repair *is an express warranty* that the promise to repair will be honored." *Owens v. Patent Scaffolding Co. Div. of Harsco*, 354 N.Y.S.2d 778, 784 (emphasis added) (cited by *Long Island Lighting*); *accord Long Island Lighting Co.*, 6 F.3d at 889.

of limitations.  (*Id.*, Flynn Dep. Tr. 370:9-16).  As such, any argument that POG was lulled into anything is unsupported by the evidence and POG's own deposition testimony.[15]

The doctrine of equitable estoppel is an "uncommon remedy."  *Ross v. Louise Wise Servs., Inc.*, 868 N.E.2d 189, 198 (N.Y. 2007).  If the defendant did not make any affirmative misrepresentations, estoppel is appropriate only where there is a fiduciary relationship that gave the defendant an obligation to inform the plaintiff of facts that might give rise to an action.[16]

POG and UMSA entered into a Limited Joint Defense Agreement ("LJDA") in 2008.  (ECF No. 58, Opp'n to Mot., pp. 24-25, Ex. L).  The LJDA provided that it "shall not create any agency, partnership, joint venture, or similar relationship between the Parties, nor shall it affect or be construed as an apportionment of any expenses, recovery, or liability of any kind," that it would not create "create a duty between the Parties to prosecute and/or defend claims on behalf of the other Party," and that "any exchange of Joint Defense Information will not constitute a waiver of any rights that the clients may possess."  (*Id.* at ¶¶ 7, 23, 24).

The Opposition contains no allegation that UMSA made an affirmative misrepresentation that would serve as the basis for equitable estoppel.  Per the LJDA, there is no fiduciary relationship between POG and UMSA, and, as such, under *Dionisio*, it would not be proper for UMSA to be estopped from asserting its statute of limitations defense.

| | |
|---|---|
| Dated: May 21, 2014 | AKERMAN LLP |
| Martin Domb<br>666 Fifth Avenue, 20th Floor<br>New York, New York 10103<br>Telephone: (212) 880-3800<br>Fax: (212) 880-8965<br>E-mail: martin.domb@akerman.com | By:___/s Jeffrey G. Gilmore_____<br>Jeffrey G. Gilmore (Admitted *pro hac vice*)<br>750 9th Street, N.W., Suite 750<br>Washington, D.C. 20001<br>Telephone: (202) 393-6222/Fax: (202) 393-5959<br>E-mail: jeff.gilmore@akerman.com<br>*Attorneys for Defendant Usiminas Mecânica S.A.* |

---

[15] UMSA, through counsel, frequently reminded POG that it was reserving all of its rights and in no way lulled POG into not bringing suit against UMSA.  (*See, e.g.,* Gilmore Decl., Exs. 1-2).
[16] *Dionisio v. George De Rue Contractors, Inc.*, 833 N.Y.S.2d 786, 787 (2007).