UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
PERINI/O&G, A JOINT VENTURE,      :
          Plaintiff,      :
                                 :     **MEMORANDUM DECISION**
v.                             :
                            :     12 CV 1931 (VB)
                            :
USIMINAS MECÂNICA S.A., and USINAS   :
SIDESÚRGICAS DE MINAS GERAIS S.A. –   :
USIMINAS,                        :
          Defendants.      :
------------------------------------------------------------x

Briccetti, J.:

Plaintiff Perini/O&G brings this diversity action against defendant Usiminas Mecânica

S.A. ("UMSA"), asserting claims under New York law for breach of contract, breach of express

and implied warranties, and breach of the implied covenant of good faith and fair dealing.[1]

Before the Court is UMSA's motion for summary judgment on the ground that this action

is time-barred.  (Doc. #54).  For the following reasons, the motion is GRANTED in part and

DENIED in part.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

## BACKGROUND

The parties have submitted briefs, statements of facts, and declarations with supporting

exhibits, which reflect the following factual background.

I.    The Prime Contract Warranty

This action arises out of a construction project to replace portions of the roadway on the

Bronx–Whitestone Bridge.  In December 2003, the Triborough Bridge and Tunnel Authority

---

[1]     Plaintiff also brought a claim against Usinas Siderúrgicas de Minas Gerais S.A. –
Usiminas, which the Court dismissed on December 3, 2012.  (Doc. #27).  Accordingly, UMSA is
the only defendant remaining in this case.

("TBTA") hired plaintiff to be the project's general contractor.  Plaintiff's contract with the TBTA (the "Prime Contract") includes a "Warranty of Construction" (the "Prime Contract Warranty"), which provides, in pertinent part: "For a period of one year from the date of Substantial Completion, the Contractor warrants that the Work conforms to the [Prime] Contract requirements and is free of any patent or latent defect of the material or workmanship." (Gilmore Decl. Ex. 3).

The Prime Contract defines "Work" as "all matters and things herein agreed to be constructed, furnished, installed, or done, by or on the part of the Contractor."  (Flynn Aff. Ex. B).  The "Work" is "Substantially Complete" when a TBTA-designated engineer determines "there are no material and substantial variations from the Contract Documents and the Work is fit for its intended purpose."  (Id.).  Upon "Substantial Completion," the engineer must issue a "Certificate of Substantial Completion."  (Id.).

Although TBTA's engineer ultimately decides when the project is Substantially Complete, the Prime Contract allows plaintiff to submit a written request for inspection "[w]hen [plaintiff] is of the opinion that the Work is Substantially Complete."  (Flynn Aff. Ex. B).  If plaintiff makes such a request, within twenty-five days the TBTA must either issue a Certificate of Substantial Completion or provide a written explanation of why the Work is not Substantially Complete.

Here, by letter dated April 3, 2007, plaintiff informed the TBTA that, in plaintiff's view, the project was Substantially Complete.  Accordingly, plaintiff requested the engineer perform an inspection and issue a Certificate of Substantial Completion.  But, as of the filing of this motion, no Certificate of Substantial Completion has been issued.

II.    The Purchase Order and the BAS Warranty

In March 2004, plaintiff entered into a separate contract with UMSA (the "Purchase

Order") under which UMSA agreed to manufacture and supply orthotropic steel deck panels and

other steel products for the project.  UMSA was to weld each panel to underlying support ribs.

The Purchase Order contains an express warranty by UMSA "that items and work

covered by [the Purchase Order] will conform to the specifications, drawings, design, plans, data,

or other description furnished or specified by [plaintiff], will be fit and sufficient for the purpose

intended, merchantable, of good material and workmanship and free from defects" (the

"Purchase Order Warranty").  (Gilmore Decl. Ex. 1).

Elsewhere in the Purchase Order, UMSA represented it would pay "the cost of correcting

non-conforming conditions [in the deck panels] caused by [UMSA]."  (Gilmore Decl. Ex. 1).

UMSA also agreed to apply a "bonded aggregate surface" ("BAS") on the deck panels.[2]

(Gilmore Decl. Ex. 1).  Section 02548 of the Prime Contract details the BAS-related work to be

done.  Section 02548 contains the following warranty provision (the "BAS Warranty"):

> The Manufacturer [a company named Poly-Carb Corporation] and
> the Contractor [plaintiff], by acceptance of the Work described in
> this specification, jointly agree to guarantee the wearing surface
> against all defects incurred for a period of five (5) years.  The
> guarantee shall commence on the date of acceptance of the [BAS-
> related] Work [by the TBTA].  The guarantee shall cover, all labor
> and materials required to satisfactorily repair or replace the
> wearing surface due to defects in materials and workmanship.

(Flynn Aff. Ex. F).

Plaintiff contends the Prime Contract Warranty and the BAS Warranty were incorporated

by reference into the Purchase Order and, therefore, are binding on UMSA.

_____

[2]    The BAS was an epoxy coating designed to "provide high pavement friction, and a
surface which is impermeable."  (Flynn Aff. Ex. F).

III.   Delivery of the Deck Panels and Discovery of Defects

It is undisputed UMSA delivered all of the orthotropic steel deck panels to plaintiff by no later than August 30, 2006.

On May 21, 2007, a biennial inspection of the bridge revealed cracks in some of the welds connecting the deck panels to their underlying ribs.  The TBTA informed plaintiff about the cracks the following day, and eventually required plaintiff to replace or repair the cracked welds.  Plaintiff seeks to recover the costs of repairing the cracked welds in this action.

The TBTA also discovered defects in the BAS in "early 2007," and directed plaintiff remove and replace the faulty BAS.  (Flynn Aff. ¶ 28).

IV.   Settlement Negotiations

In July 2007, a consulting firm hired by the TBTA concluded the cracks in the rib-to-deck welds were caused by defects in UMSA's fabrication process.  Despite this conclusion, plaintiff did not then sue UMSA to recover the costs of repairing the cracked welds.

At that time, the parties were negotiating with the TBTA to settle other claims arising out of the project.  In fact, plaintiff and UMSA were working together in these negotiations pursuant to a Limited Joint Defense Agreement, although the agreement made clear it did not "create any agency, partnership, joint venture, or similar relationship" between plaintiff and UMSA.  (Flynn Aff. Ex. L).  UMSA allegedly urged plaintiff to resolve UMSA's liability for the cracked welds as part of a global settlement with the TBTA.

However, plaintiff has not identified an instance when UMSA asked plaintiff to refrain from suing UMSA over the cracked welds.  Moreover, UMSA refused to sign a proposed agreement tolling the statute of limitations on plaintiff's potential claims.

In March 2011, plaintiff learned UMSA intended to develop a technical defense and deny liability for the cracked welds.

V.     This Action

Plaintiff filed a lawsuit against UMSA in Supreme Court, Westchester County, on May 11, 2011.  The case was later removed to this Court.

The parties agree plaintiff's claims are subject to the four-year statute of limitations in Section 2-725 of the New York Uniform Commercial Code ("UCC").  UMSA contends all claims are time-barred.  Plaintiff disagrees, and also argues its claims should survive because the doctrine of equitable estoppel precludes UMSA from asserting a statute of limitations defense.

**DISCUSSION**

I.     Standard of Review

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A fact is material when it "might affect the outcome of the suit under the governing law. . . .  Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A dispute about a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party.  See id.  The Court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." Wilson v. Nw. Mut. Ins. Co., 625 F.3d 54, 60 (2d Cir. 2010) (citation omitted).  It is the moving

party's burden to establish the absence of any genuine issue of material fact.  Zalaski v. City of Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010).

If the non-moving party has failed to make a sufficient showing on an essential element of his case on which he has the burden of proof, then summary judgment is appropriate.  Celotex Corp. v. Catrett, 477 U.S. at 323.  If the non-moving party submits "merely colorable" evidence, summary judgment may be granted.  Anderson v. Liberty Lobby, Inc., 477 U.S. at 249-50.  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011) (internal citations omitted).  The mere existence of a scintilla of evidence in support of the non-moving party's position is likewise insufficient; there must be evidence on which the jury could reasonably find for him. Dawson v. Cnty. of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the Court construes the facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party.  Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003).  If there is any evidence from which a reasonable inference could be drawn in favor of the non-moving party on the issue on which summary judgment is sought, summary judgment is improper.  See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc., 391 F.3d 77, 83 (2d Cir. 2004).

II.     Equitable Estoppel

Plaintiff argues UMSA should be estopped from asserting a statute of limitations defense because UMSA "lulled" plaintiff into not filing suit earlier by working with plaintiff to resolve "the weld crack issue" as part of a global settlement with the TBTA.  (Flynn Aff. ¶¶ 36-40).

"[E]quitable estoppel applies where it would be unjust to allow a defendant to assert a statute of limitations defense." Zumpano v Quinn, 6 N.Y.3d 666, 673 (2006) (internal quotation marks omitted).  Equitable estoppel is "an extraordinary remedy" to be invoked "only under exceptional circumstances." Twersky v. Yeshiva Univ., 993 F. Supp. 2d 429, 442 (S.D.N.Y. 2014) (internal quotation marks omitted).  The doctrine "requires proof that the defendant made an actual misrepresentation or, if a fiduciary, concealed facts which he was required to disclose, that the plaintiff relied on the misrepresentation and that the reliance caused plaintiff to delay bringing timely action." Kaufman v. Cohen, 307 A.D.2d 113, 122 (1st Dep't 2003).

Plaintiff has not offered any evidence UMSA made a misrepresentation that hindered plaintiff from bringing this case.  See Twersky v. Yeshiva Univ., 993 F. Supp. 2d at 442 (defendant's "fraud, misrepresentations, or deception must be affirmative and specifically directed at preventing the plaintiff from bringing suit").  The mere fact the parties were pursuing settlement negotiations is insufficient as a matter of law to establish equitable estoppel. Bulgartabac Holding AD v. Republic of Iraq, 451 F. App'x 9, 11 (2d Cir. 2011) (summary order); Toto, Inc. v. Sony Music Entm't, 2012 WL 6136365, at *12 (S.D.N.Y. Dec. 11, 2012).

Nor has plaintiff offered any evidence suggesting the parties had a fiduciary relationship. Indeed, the Limited Joint Defense Agreement expressly provides it does not "create any agency, partnership, joint venture, or similar relationship between the Parties."  (Flynn Aff. Ex. L).

Moreover, UMSA's refusal to sign plaintiff's proposed tolling agreement defeats any argument plaintiff was "lulled" into inaction.  See Allman v. UMG Recordings, 530 F. Supp. 2d 602, 609 (S.D.N.Y. 2008) ("Plaintiffs were not reasonably lulled" because defendant "expressly refused to sign the tolling agreement proposed by" plaintiffs.).

The Court therefore will not preclude UMSA from raising a statute of limitations defense.

III.     Breach of Contract

Plaintiff has a timely breach of contract claim.

Under the UCC, the four-year statute of limitations on a breach of contract claim begins to run when the breach occurs.  UCC § 2-725(2).  Thus, if plaintiff's breach of contract claim is to survive summary judgment, there must be evidence from which a reasonable jury could conclude UMSA breached the Purchase Order on or after May 11, 2007.

The record contains such evidence.  Under the Purchase Order, UMSA "is responsible for the cost of correcting non-conforming conditions caused by [UMSA]."  (Gilmore Decl. Ex. 1). It is undisputed plaintiff, not UMSA, bore the costs of repairing the cracked rib-to-deck welds. There is also evidence UMSA caused the cracks, as the consulting firm retained by the TBTA determined the cracks were the result of defects in UMSA's fabrication process.  And because the cracks were discovered on May 21, 2007, UMSA's failure to pay the costs of repairing the cracked welds necessarily occurred within the four-year limitations period.

UMSA contends its obligation to pay the cost of correcting non-conforming conditions is a "repair or replacement" warranty, any breach of which occurred when the deck panels were delivered by August 30, 2006.  See UCC § 2-725(2) (generally, "[a] breach of warranty occurs when tender of delivery is made.").  But characterizing UMSA's promise to pay for correcting non-conforming conditions as a "repair or replacement" warranty does not make plaintiff's claim for breach of that promise untimely.  Under New York law, a claim for breach of "an express promise to repair or replace arises when the equipment malfunctions"—here, May 21, 2007. Long Island Lighting Co. v. Transam. Delaval, Inc., 646 F. Supp. 1442, 1456 (S.D.N.Y. 1986), aff'd sub nom. Long Island Lighting Co. v. Imo Indus. Inc., 6 F.3d 876, 889 (2d Cir. 1993); accord Allen v. Andersen Windows, Inc., 913 F. Supp. 2d 490, 504 (S.D. Ohio 2012) ("[U]nlike

claims for breach of warranty based upon the condition of the product, a claim for breach based upon the failure to 'repair or replace' does not accrue upon delivery." (applying Ohio law)).

UMSA further contends plaintiff did not assert this theory of breach in the amended complaint and, therefore, should not be allowed to present it now in opposition to the pending motion.  But the amended complaint alleges UMSA "was responsible for the cost of correcting non-conforming conditions caused by" UMSA, and plaintiff suffered damages by having to repair the cracked welds itself.  (Am. Compl. ¶¶ 13, 20).  These allegations were sufficient to give UMSA fair notice of this theory of liability.  See Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 192 (2d Cir. 2008).

Accordingly, UMSA's motion for summary judgment on plaintiff's breach of contract claim is denied to the extent that claim is based on UMSA's alleged breach of its promise to pay the cost of correcting the weld defects it caused.[3]

IV.    Breach of Express Warranty

As noted above, the statute of limitations on a breach of warranty claim generally begins to run upon tender of delivery of the goods.  UCC § 2-725(2).  But when "a warranty explicitly extends to future performance of the goods and the discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered."  Id.  "A warranty of future performance is one that guarantees that the product will work for a specified period of time."  Gelber v. Stryker Corp., 788 F. Supp. 2d 145, 166 (S.D.N.Y. 2011) (internal quotation marks omitted).

---

[3]      To the extent plaintiff alleges UMSA also breached the Purchase Order by furnishing deck panels with defective welds (Am. Compl. ¶ 18), that claim is untimely.  UMSA delivered the deck panels no later than August 30, 2006, and plaintiff did not sue until May 11, 2011, more than for years after the delivery date.

Plaintiff contends UMSA breached the Purchase Order Warranty, the Prime Contract Warranty, and the BAS Warranty.  The Court considers each express warranty in turn.

A.    Purchase Order Warranty

Plaintiff's claim for breach of the Purchase Order Warranty is untimely.

Plaintiff does not dispute UMSA delivered the deck panels by August 30, 2006—more than four years before plaintiff brought suit on May 11, 2011.  Thus, plaintiff's claim for breach of the Purchase Order Warranty can survive only if that warranty "explicitly extends to future performance of the" panels.  UCC § 2-725(2).  It does not, as it lacks any guarantee the panels "will work for a specified period of time."  Gelber v. Stryker Corp., 788 F. Supp. 2d at 166.

Accordingly, UMSA is entitled to summary judgment on plaintiff's breach of express warranty claim to the extent that claim is based on the Purchase Order Warranty.

B.    Prime Contract Warranty

Even assuming the Prime Contract Warranty is binding on UMSA, UMSA is entitled to summary judgment on plaintiff's claim for breach of that warranty.

Unlike the Purchase Order Warranty, the Prime Contract Warranty is a warranty of future performance.  Indeed, the Prime Contract Warranty guarantees the "Work" will conform to the Prime Contract's requirements and will be free from defects "[f]or a period of one year from the date of Substantial Completion."  (Gilmore Decl. Ex. 3).  Thus, for plaintiff's claim to be timely, plaintiff must have discovered the alleged breach of the Prime Contract Warranty on or after May 11, 2007.  UCC § 2-725(2).

Although the cracked rib-to-deck welds were discovered on May 21, 2007, the cracked welds are not necessarily evidence of a breach of the Prime Contract Warranty.  The Prime Contract Warranty only guaranteed the quality of the Work for one year "from the date of

Substantial Completion." (Gilmore Decl. Ex. 3). Thus, any defects discovered <u>before</u> the date of Substantial Completion could not give rise to a breach, as the warranty would not yet have taken effect. The cracked welds are therefore evidence of a breach only if there is enough evidence for a reasonable jury to find the date of Substantial Completion was before May 21, 2007.

There is not. Plaintiff's mere assertion the project was Substantially Complete as of April 3, 2007, although perhaps a "scintilla of evidence" in support of its position, is simply insufficient. <u>Dawson v. Cnty. of Westchester</u>, 373 F.3d at 272. It was for the TBTA's engineer, not plaintiff, to decide whether the Work was Substantially Complete. Had the engineer agreed with plaintiff, the engineer would have had to issue a Certificate of Substantial Completion by April 28, 2007. Plaintiff admits no such certificate has been issued.

Accordingly, UMSA is entitled to summary judgment on plaintiff's claim for breach of the Prime Contract Warranty.

C.    <u>BAS Warranty</u>

UMSA is also entitled to summary judgment on plaintiff's claim for breach of the BAS Warranty—even assuming the BAS Warranty, too, binds UMSA.

The BAS Warranty is a warranty of future performance, as it "guarantee[s] the wearing surface against all defects incurred for a period of five (5) years" from the date the TBTA accepts the BAS-related work. (Flynn Aff. Ex. F). And, like the Prime Contract Warranty, the BAS Warranty does not take effect immediately, but only "on the date of acceptance" of the BAS-related Work. (<u>Id</u>.). Thus, plaintiff's claim for breach of the BAS Warranty is timely only if (i) the BAS defects were discovered on or after May 11, 2007, and (ii) the date of acceptance preceded the date of the discovery, meaning the BAS Warranty was in effect and capable of being breached at the time of discovery.

11

There is not enough evidence for a reasonable jury to conclude a breach of the BAS Warranty was discovered on or after May 11, 2007.  According to plaintiff, the TBTA discovered defects in the BAS in "early 2007."  (Flynn Aff. ¶ 28).  Again, although this is perhaps a "scintilla of evidence" in plaintiff's favor, more is needed to survive summary judgment.  Dawson v. Cnty. of Westchester, 373 F.3d at 272.

Accordingly, the Court grants UMSA summary judgment on plaintiff's claim for breach of the BAS Warranty.

V.     Breach of Implied Warranty and Implied Covenant of Good Faith

Plaintiff did not oppose UMSA's motion with respect to plaintiff's claims for breach of implied warranty and breach of the implied covenant of good faith and fair dealing, apart from arguing UMSA should be equitably estopped from raising a statute of limitations defense at all.  Plaintiff thus concedes those claims are time-barred.  Because the Court has rejected plaintiff's equitable estoppel argument, UMSA is entitled to summary judgment on those two claims.

**CONCLUSION**

Usiminas Mecânica S.A.'s motion for summary judgment is GRANTED with respect to plaintiff's claims for breach of express warranty, breach of implied warranty, and breach of the implied covenant of good faith and fair dealing.  The motion is DENIED with respect to plaintiff's breach of contract claim, but only insofar as the claim alleges a breach of UMSA's obligation to pay the cost of correcting non-conforming conditions caused by UMSA.

The Clerk is directed to terminate the motion.  (Doc. #54).

The parties are directed to submit a joint pretrial order in accordance with the Court's Individual Practices by February 20, 2015.

12

Counsel are directed to attend a status conference on February 27, 2015, at 9:45 a.m., at which time the Court will schedule a trial date and set dates for pretrial submissions.

Dated: January 20, 2015
  White Plains, NY

        SO ORDERED:

        Vincent L. Briccetti
        United States District Judge