UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
PERINI/O&G, A JOINT VENTURE,

        Plaintiff,

                                   Case No. 12 CV 1931 (VB)

    v.

USIMINAS MECÂNICA S.A. and USINAS
SIDESÚRGICAS DE MINAS GERAIS S.A. -
USIMINAS

        Defendants.
-------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT USIMINAS MECÂNICA'S MOTION FOR PARTIAL RECONSIDERATION, OR IN THE ALTERNATIVE, TO CERTIFY THE COURT'S DECISION FOR INTERLOCUTORY APPEAL

AKERMAN LLP
666 Fifth Avenue, 20th Floor
New York, New York 10103
Tel.: (212) 880-3800
Fax: (212) 880-8965

AKERMAN LLP
750 9th Street, N.W., Suite 750
Washington, D.C. 20001
Tel.: (202) 393-6222
Fax: (202) 393-5959

*Attorneys for Defendant Usiminas Mecânica S.A.*

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS..................................................................................................... ii

TABLE OF AUTHORITIES .............................................................................................. iii

PRELIMINARY STATEMENT ..........................................................................................1

LAW AND ARGUMENT ....................................................................................................4

    I.       Applicable Legal Standard...........................................................................4

    II.      This Court incorrectly interprets a specification of remedy under a breach of contract analysis and subjects UMSA to indefinite liability.....................5

    III.   This Court incorrectly applies a breach of contract analysis to the POG Remedy Provision ................................................................................................9

        A.  Even if this Court finds that UMSA's obligation to pay the cost of correcting non-conforming conditions is not a specification of remedy, a breach of such obligation should be analyzed under UCC § 2-725(2). ..........................................9

        B.  The Court overlooks the differences between breach of warranty and breach of contract claims ...................................................................................11

    IV.   Application of UCC § 2-725(1) to UMSA's obligation to pay the cost of correcting non-conforming conditions would still require this Court to start the four-year limitations period on delivery to avoid an indefinite statute of limitations ................13

    V.    Principles of judicial economy warrant certification of this central, dispositive issue for interlocutory appeal...................................................................15

CONCLUSION...................................................................................................................16

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                   **Page(s)**

*Allen v. Anderson Windows, Inc.*,
    913 F. Supp. 2d 490 (S.D. Ohio 2012) ....................................................................3, 14, 15

*Baker v. Wade*,
    949 S.W.2d 199 (Mo. Ct. App. 1997).......................................................................12

*Beal v. General Motors Corp.*,
    354 F. Supp. 423 (D. Del. 1973)................................................................................6

*Bocre Leasing Corp. v. General Motors Corp.*,
    84 N.Y.2d 685 (1995) ...............................................................................................12

*Brainard v. Freightliner Corp.*,
    No. 02-CV-0317, 2002 WL 31207467 (W.D.N.Y. Oct. 1, 2002) ...........................10

*Centennial Ins. Co. v. General Elec. Co.*,
    253 N.W.2d 696 (Mich. App. 1977)..........................................................................7

*Comm'rs of Fire Dist. No. 9 v. American La France*,
    424 A.2d 441 (N.J. Super. 1980) ...............................................................................7

*Cosman v. Ford Motor Co.*,
    674 N.E.2d 61 (Ill. App. 1996) ................................................................................15

*Dincher v. Marline Firearms Co.*,
    198 F.2d 821 (2nd Cir. 1952)....................................................................................9

*East River Steamship Corp. v. Transamerica Delaval, Inc.*,
    476 U.S. 858 (1986).................................................................................................11

*Flagg Energy Dev. Corp. v. Gen. Motors Corp. Allison Gas Turbine Div.*,
    No. CV920242198S, 1996 WL 589252 (Conn. Super. Ct. Oct. 3, 1996), *aff'd sub*
    *nom. Flagg Energy Dev. Corp. v. Gen. Motors Corp.*, 709 A.2d 1075 (Conn. 1998) ...........14

*Ford Motor Co. v. Mayes*,
    575 S.W.2d 480 (Ky. App. 1978) ..............................................................................6

*Ford Motor Co. v. Reid*,
    465 S.W.2d 80 (Ark. 1971)........................................................................................6

*Gianakakos v. Commodore Home Sys.*,
    727 N.Y.S.2d 806 (3d Dep't 2001) ..........................................................................10

*Gladden v. Cadillac Motor Car Div.*,
   416 A.2d 394 (N.J. 1980)...........................................................................................6

*H. Sand & Co., Inc. v. Airtemp Corp.*,
   738 F. Supp. 760 (S.D.N.Y. 1990), *rev'd on other grounds*, 934 F.2d 450 (2nd Cir.
   1991) ......................................................................................................................10

*Hahn v. Ford Motor Co.*,
   434 N.E.2d 943 (Ind. App. 1982) ..............................................................................6

*Jackson v. Eddy's LI RV Center, Inc.*,
   845 F. Supp. 2d 523 (E.D.N.Y. 2012) ..............................................................2, 8, 15

*Kelly v. Olinger Travel Homes, Inc.*,
   117 P.3d 282 (Or. Ct. App. 2005)..............................................................................12

*Kirby v. NMC/Continue Care*,
   993 P.2d 951 (Wyo. 1999).........................................................................................12

*Kusens v. Bodyguard Rustproofing Co.*,
   23 Ohio Op. 3d 440 (Ct. App. 1980) ..........................................................................6

*Liecar Liquors Ltd. v. CRS Bus. Computers, Inc.*,
   613 N.Y.S.2d 298 (3d Dep't 1994) ...........................................................................10

*LILCO v. Transam. Delaval, Inc.*,
   646 F. Supp. 1442 (S.D.N.Y. 1986)...........................................................................10

*Lincoln Pulp & Paper Co. v. Dravo Corp.*,
   436 F. Supp. 262 (D. Maine 1977) ..............................................................................6

*Long Island Lighting Co. v. IMO Indus.*,
   6 F.3d 876 (2nd Cir. 1993)..........................................................................3, 7, 13, 14

*Mydlach v. DaimlerChrysler Corp.*,
   875 N.E.2d 1047 (Ill. 2007).......................................................................................15

*Neal v. Asta Funding, Inc.*,
   No. 13-CV-2176, 2014 WL 3891239 (S.D.N.Y. June 27, 2014) ...............................5

*Nebraska Popcorn, Inc. v. Wing*,
   602 N.W.2d 18 (Neb. 1999).....................................................................................7, 8

*New England Power Co. v. Riley Stoker Corp.*,
   477 N.E.2d 1054 (Mass. App. Ct. 1985) .................................................................7, 8

*Niagara Mohawk Power Corp. v. Ferranti-Packard Transformers, Inc.*,
   597 N.Y.S.2d 884 (Sup. Ct. 1993)............................................................................11

iv

*Ontario Hydro v. Zallea Sys., Inc.*,
    569 F. Supp. 1261 (D. Del. 1983) ...................................................................7

*Orange Motors, Inc. v. Dade County Dairies, Inc.*,
    258 So.2d 319 (Fla. Dist. Ct. App. 1972) ......................................................6

*Owens v. Patent Scaffolding Co.*,
    354 N.Y.S.2d 778 (Sup. Ct. 1974), *rev'd on other grounds*, 376 N.Y.S.2d 948 (2d
    Dep't 1975) ......................................................................................................7

*Patron Aviation, Inc. v. Teledyne Indus., Inc.*,
    267 S.E.2d 274 (Ga. App. 1980) .....................................................................6

*Patsis v. Nicolia*,
    992 N.Y.S.2d 349 (2d Dep't 2014) ..................................................................8

*Posttape Assocs. v. Eastman Kodak Co.*,
    537 F.2d 751 (3rd Cir. 1976) ...........................................................................6

*Prince v. LeVan*,
    486 P.2d 959 (Alaska 1971) ...........................................................................12

*R.W. Murray Co. v. Shatterproof Glass Corp.*,
    697 F.2d 818 (8th Cir. 1983) ...........................................................................7

*RCJV Holdings, Inc. v. Collado Ryerson, S.A. DE C.V.*,
    18 F. Supp. 3d 534 (S.D.N.Y. 2014) ...............................................................8

*Schwatka v. Super Millwork, Inc.*,
    965 N.Y.S.2d 547 (2d Dep't 2013) ................................................................10

*Selby v. Goodman Mfg. Co.*,
    No. 2:13-CV-2162, 2014 WL 2740317 (N.D. Ala. June 17, 2014) ...............15

*Shero v. Home Show U.S.A., Ltd.*,
    598 N.Y.S.2d 408 (4th Dep't 1993) ...............................................................10

*Standard Alliance Indus. v. Black Clawson Co.*,
    587 F.2d 813 (6th Cir. 1978), *cert. denied*, 441 U.S. 923 (1979) ..................6, 7, 9

*Statler v. Dell, Inc.*,
    775 F. Supp. 2d 474 (E.D.N.Y. 2011) ................................................13, 14, 15

*Stewart–Decatur Sec. Sys., Inc. v. Von Weise Gear Co.*,
    517 F.2d 1136 (8th Cir. 1975) .......................................................................12

*Sw. Bell Tel. Co. v. FDP Corp.*,
    811 S.W.2d 572 (Tex. 1991) ..........................................................................12

*Trans–Spec Truck Serv., Inc. v. Caterpillar, Inc.*,
  524 F.3d 315 (1st Cir. 2008) ............................................................................7, 8

*Versico, Inc. v. Eng'rd Fabrics Corp.*,
  520 S.E.2d 505 (Ga. 1999) ....................................................................................15

**Statutes**                                                                        **Page(s)**

UCC § 1-201(2) ........................................................................................................6

UCC § 1-201(32) ......................................................................................................6

UCC § 1-201(34) ......................................................................................................6

UCC § 2-313 ..............................................................................................2, 3, 9, 10

UCC § 2-316(4) ........................................................................................................5

UCC § 2-714 ..........................................................................................................12

UCC § 2-719 ............................................................................................................5

UCC § 2-719(1)(a) ....................................................................................................6

UCC § 2-725 ..........................................................................................10, 13, 16

UCC § 2-725(2) ............................................................................................... passim

28 USC § 1292(b) ..................................................................................................16

**Secondary Sources**                                                               **Page(s)**

1 White & Summers Uniform Commercial Code § 13:26 (6th ed. 2012) ....................6

Andrew M. Baker, et al., *Special Project, Article Two Warranties in Commercial
  Transactions*, 64 Cornell L. Rev. 30, 226 n. 829 (1978) ..........................................6

Defendant Usiminas Mecânica S.A. ("UMSA") respectfully submits this Memorandum of Law in support of its Motion for Reconsideration, in part, of the Memorandum Decision dated January 20, 2015 (ECF No. 63, hereinafter the "Decision"), which granted in part, and denied in part, UMSA's Motion for Summary Judgment as to all of the claims asserted against UMSA. This memorandum of law also supports UMSA's alternative request that the Court certify the Decision for interlocutory appeal.

## PRELIMINARY STATEMENT

On May 11, 2011 Plaintiff Perini Corporation / O&G Industries, Inc., A Joint Venture, ("POG") filed this action against UMSA in state court (as well as another entity that the Court dismissed from the present action).   (*See* ECF No. 1, Notice of Removal).   The case was removed to this Court, and POG filed an Amended Complaint alleging breach of contract (Count I), breach of express and implied warranty (Counts II and III), breach of the obligation of good faith and fair dealing (Count IV), and breach of corporate payment and performance bond (Count V).[1]  (*See* ECF No. 19, Am. Compl.).

On April 7, 2014, UMSA filed a Motion for Summary Judgment as to the remaining four counts in POG's Complaint.  (ECF No. 54, Mot. for Summ. J.).  On January 20, 2015, the Court granted in part, and denied in part, UMSA's Motion for Summary judgment.  The Court granted UMSA's motion for summary judgment as to Count II, breach of express warranty, Count III, breach of implied warranty, and Count IV, breach of the obligation of good faith and fair dealing.  (Decision at 8-12).  The Court denied UMSA's motion for summary Judgment as to Count I, breach of contract, "to the extent that claim is based on UMSA's alleged breach of its promise to pay the cost of correcting the weld defects it caused." (*Id.* at 9).  The Court also ruled

---

[1] Count 5 for breach of corporate payment and performance bond was dismissed by this Court on December 3, 2012.  (ECF No. 27, Mem. Decision).

that, "[t]o the extent plaintiff alleges UMSA also breached the Purchase Order by furnishing deck panels with defective welds, that claim is untimely.  UMSA delivered the deck panels no later than August 30, 2006, and plaintiff did not sue until May 11, 2011, more than four years after the delivery date."  (*Id.*) (internal citations omitted).

The Decision, however, overlooked that pursuant to the Uniform Commercial Code ("UCC"), the language in the Purchase Order stating UMSA "is responsible for the cost of correcting non-conforming conditions caused by [UMSA]" (hereinafter the "POG Remedy Provision") is nothing more than a specification of remedy for breach of warranty.  Not, as the Court holds, a separate promise to repair extending the statute of limitations.  Respectfully, this Court should be guided by the holding in *Jackson v. Eddy's LI RV Center, Inc.*, 845 F. Supp. 2d 523 (E.D.N.Y. 2012).  In *Jackson*, Judge Wexler found that a "repair or replacement" obligation "neither delays accrual nor creates a warranty separate and apart from the product warranty. Instead, such warranties do nothing more than limit Plaintiff's remedy in the event of breach." *Id.* at 534.

Even if the POG Remedy Provision were a separate promise, rather than a specified remedy available in the event of a warranty defect, the plain language of UCC § 2-313 requires the Court to interpret the Provision as a repair *warranty* instead of a general "express promise to repair",[2] as UCC § 2-313 states that: "[a]ny affirmation of fact or promise made by the seller to the buyer which *relates to* the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." (emphasis added). The language at issue here is a promise to pay the cost of correcting non-conforming conditions. Thus, the language is a promise and it relates to the goods, placing it under the statute of limitations prescribed by UCC § 2-725(2).  The Court overlooked the law established by the

_____

[2] (Decision at 8).

UCC by erroneously construing a "repair warranty" as an "express promise to repair,"[3] without reference to the UCC's definition of warranty and its related mandate for accrual of any claims upon delivery of the goods under the Purchase Order.   With this in mind, the statute of limitations began to run upon delivery — because it is a warranty as defined under UCC § 2-313 — and expired no later than August 30, 2010.

Long Island Lighting Co. v. IMO Industries, 6 F.3d 876 (2nd Cir. 1993) is inapposite because it concerns an "express promise to repair" that is accompanied by language prescribing a definite time frame,[4] whereas the POG Purchase Order in this case sets forth no defined time frame for which UMSA is responsible for "correcting non-conforming conditions" it allegedly caused.   Long Island Lighting, involved terms creating an express duty to repair for one-year after the equipment was "in place."   No such language appears in the POG Purchase Order. Extending the holding of  Long Island Lighting to this case overlooks the clear requirements needed to apply the future performance exception under the UCC, or otherwise move the statute of limitations accrual date to anything but the date of delivery.   This also erroneously creates an indefinite statute of limitations that could persist indefinitely until a defect is discovered, a repair demand is issued, and rejected.[5]   Such a result runs afoul of the UCC's goal of providing

---

[3] The Court ruled: "But characterizing UMSA's promise to pay for correcting non-conforming conditions as a *"repair or replacement" warranty* does not make plaintiff's claim *for breach of promise* untimely.   Under New York law, a claim for breach of an *express promise to repair* arises when the equipment malfunctions" — here May 21, 2007.  (emphasis added).

[4] *Id.* at 890.

[5] All reported decisions we have found ruling that repair obligations only accrue when the vendor fails to repair or replace rely on explicit Purchase Order language that eliminates the risk of indefinite liability.   For example, the decisions cited by the Court involve situations where a seller promises to "repair or replace" the goods at issue within a defined period, *e.g.*, ten years to repair windows (*Allen v. Anderson Windows, Inc.*, 913 F. Supp. 2d 490, 500 (S.D. Ohio 2012)), or one year after the goods are "in place" (*Long Island Lighting*, 6 F.3d at 890).   Such limitations are not present in the Purchase Order, so unlike the decisions relied upon by the Court, UMSA is

certainty in commercial transactions and the unambiguous language of UCC § 2-725(2) that "[a] cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach."

Similarly, all of the reported cases in U.S. jurisdictions, which examine "repair or replacement" obligations under the lens of a breach of contract, as the Court does, only find such obligations to be prospective obligations when: (1) there is an explicit statement that the seller will repair or replace the goods in the event that a defect becomes apparent, and (2) an explicit statement of the time period for which the seller's obligation to repair or replace exists.[6]  Neither of the two characteristics necessary to establish a prospective obligation are present in this case. Contrary to the UCC objective of bringing certainty to commercial transactions, the Court's denial of summary judgment as to POG's breach of contract claim subjects UMSA to an indefinite limitation for potential claims.

Accordingly, for these reasons and the analysis set forth below, the Court should grant UMSA's Motion for Reconsideration, in part, of the Decision.  If the Court does not grant UMSA's motion for reconsideration and modify its Decision accordingly, then the Court should certify the legal issue raised herein for interlocutory appeal.

## LAW AND ARGUMENT

### I.    Applicable Legal Standard

To prevail on a motion for reconsideration, the movant must demonstrate an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.  Such a motion should be granted only when the Court has overlooked facts or precedent that might have altered the conclusion reached in the earlier decision.  The movant's burden is

---

now subject to indefinite liability, by a determination that effectively embraces a standard that adopts the discovery of defects as the date for accrual, rather than delivery as mandated by the policies of the UCC.

[6] *See infra* Section IV.

made weighty to avoid wasteful repetition of arguments already briefed, considered and decided.

*Neal v. Asta Funding, Inc.*, No. 13-CV-2176, 2014 WL 3891239, at *1 (S.D.N.Y. June 27, 2014) (Briccetti, V.) (internal quotation marks and citations omitted).

Here, the Court overlooked: (1) authority and UCC provisions on limitation of remedies; (2) the UCC definition of warranty; (3) the differences between breach of contract claims and breach of warranty claims; and (4) that the Court's analysis would result in an indefinite statute of limitations.  Reconsideration is necessary for these reasons and to prevent manifest injustice.

## II.    This Court incorrectly interprets a specification of remedy under a breach of contract analysis and subjects UMSA to indefinite liability.

Identifying POG's Remedy Provision as a specification of remedy, in the event the goods fail to conform to the warranty, is the correct interpretation of the Purchase Order.  The Purchase Order's warranty provides that:

> The Seller expressly warrants that items and work covered by this order will conform to the specifications, drawings, design, plans, data, or other description furnished or specified by the Buyer, will be fit and sufficient for the purpose intended, merchantable, of good material and workmanship and free from defects. Seller agrees that this warranty shall survive acceptance of the items of work. Said warranty shall be in addition to any warranties of additional scope given to Buyer by Seller.

(hereinafter, the "Purchase Order Warranty") (ECF No. 56, Gilmore Decl., Ex. 1, Purchase Order, p. 10, ¶ 7).  Such a promise is the warranty while the POG Remedy Provision is the remedy.   Other UCC provisions contemplate this result.   UCC § 2-316(4) provides that "[r]emedies for breach of warranty can be limited in accordance with the provisions of this Article on liquidation of damages and on contractual modification of remedy."   UCC § 2-719 explicitly authorizes the parties to limit the "buyer's remedies to return of the goods or parts and repayment of the price or to *repair or replacement on non-conforming goods* or parts," and this

language tracks the POG Remedy Provision.   UCC § 2-719(1)(a) (emphasis added).   Not surprisingly, given this language, many courts (not considering the applicability of the statute of limitations) have treated provisions like the POG Remedy Provision as attempts to create exclusive remedies.[7]

   Under the UCC the POG Remedy Provision is nothing more than a specification of the available remedy in the event the Purchase Order goods fail to conform with the warranty requirements (*i.e*, "conform to the specifications, drawings, design, plans, data, or other description furnished or specified by the Buyer").   The UCC's definition of "remedy" makes it clear that "aggrieved" parties possess such rights: "'Remedy' means any remedial right to which an aggrieved party is entitled with or without resort to a tribunal." UCC § 1-201(32).   *See also* UCC § 1-201(2) (aggrieved party is one entitled to resort to a remedy); UCC § 1-201(34) ("'rights' includes remedies").   The availability of a remedy necessarily indicates that the seller has already breached its obligation under the warranty: "[O]bligations and remedies are counterparts; when the seller fails to do what he is required to do by the contract, i.e., fails to perform his obligation, the buyer may invoke an appropriate remedy."[8]   This distinction between

---

[7] *See Posttape Assocs. v. Eastman Kodak Co.*, 537 F.2d 751, 756 (3rd Cir. 1976); *Beal v. General Motors Corp.*, 354 F. Supp. 423, 426 (D. Del. 1973); *Aetna Casualty & Surety Co. v. Eastman Kodak Co.*, 10 U.C.C. Rep. Serv. (Callaghan) 53, 57 (D.C. Super. Ct. 1972); *Orange Motors, Inc. v. Dade County Dairies, Inc.*, 258 So.2d 319, 320 (Fla. Dist. Ct. App. 1972); *Ford Motor Co. v. Mayes*, 575 S.W.2d 480, 483 (Ky. App. 1978); *see also Patron Aviation, Inc. v. Teledyne Indus., Inc.*, 267 S.E.2d 274, 278 (Ga. App. 1980); *Kusens v. Bodyguard Rustproofing Co.*, 23 Ohio Op. 3d 440 (Ct. App. 1980); Andrew M. Baker at al., *Special Project, Article Two Warranties in Commercial Transactions*, 64 Cornell L. Rev. 30, 226 n. 829 (1978).

[8] 1 White & Summers Uniform Commercial Code § 13:26 (6th ed. 2012); *see Ford Motor Co. v. Reid*, 465 S.W.2d 80, 85 (Ark. 1971); *Lincoln Pulp & Paper Co. v. Dravo Corp.*, 436 F. Supp. 262, 277 n. 18 (D. Maine 1977); *see also Hahn v. Ford Motor Co.*, 434 N.E.2d 943, 952-53 (Ind. App. 1982) (limitation of remedy "restricts remedy available once a breach has been established"); *Gladden v. Cadillac Motor Car Div.*, 416 A.2d 394, 399 (N.J. 1980) (same).  *See also Standard Alliance Indus. v. Black Clawson Co.*, 587 F.2d 813, 821 n. 17 (6th Cir. 1978), *cert. denied*, 441 U.S. 923 (1979).   Where a repair provision is identified as a remedy, the

obligations and remedies is embedded in the statutory scheme of the UCC. *R.W. Murray Co. v. Shatterproof Glass Corp.*, 697 F.2d 818, 823 (8th Cir. 1983). Indeed, courts have treated language analogous to the POG Remedy Provision as a remedy that is an integral part of the warranty.

For example, in *Trans–Spec Truck Serv., Inc. v. Caterpillar, Inc.*, 524 F.3d 315 (1st Cir. 2008), the court analyzed a manufacturer's promise to repair or replace defective parts. The court held that promises to repair or to replace are generally viewed as specifications of a remedy rather than as an independent or separate warranty. *Id.* at 323-25. The court stated that:

> such promises are generally viewed as specifications of a remedy and that if the promise to repair is not fulfilled, then the cause of action is the underlying breach of warranty. The court describes as 'a fallacy' the argument that 'by failing to remedy its first breach, the defendant committed a second breach, giving rise to a brand new cause of action and starting anew the limitations period.' Thus, the court held that the promise to repair had no effect on the statute of limitations . . . .

*Id.* at 325 (citing *New England Power Co. v. Riley Stoker Corp.*, 477 N.E.2d 1054, 1058-59 (Mass. App. Ct. 1985).[9] Similarly, the court in *New England Power* reasoned that if limitations of remedies were construed to be separate warranties or contractual terms, then "limitations periods could be extended for virtually infinite time." *New England Power Co.*, 477 N.E.2d at 1058. *See also Nebraska Popcorn, Inc. v. Wing*, 602 N.W.2d 18, 23-24 (Neb. 1999) (a repair or

---

implication is therefore that this provision exists to redress the breach of another obligation — most likely an underlying warranty against defects. But only where the underlying warranty (if one exists) can, by its terms, be breached at a time after delivery may the remedial right itself accrue at a time after delivery. *E.g., Long Island Lighting*, 6 F.3d at 890 (repair obligation could only be breached when goods where "in place," pursuant to the terms of the contract).

[9] *See also Standard Alliance Indus. v. Black Clawson Co.*, 587 F.2d at 818, n. 10; *Ontario Hydro v. Zallea Sys., Inc.*, 569 F. Supp. 1261, 1266-1267 (D. Del. 1983); *Centennial Ins. Co. v. General Elec. Co.*, 253 N.W.2d 696, 697 (Mich. App. 1977); *Comm'rs of Fire Dist. No. 9 v. American La France*, 424 A.2d 441, 445 (N.J. Super. 1980); *Owens v. Patent Scaffolding Co.*, 354 N.Y.S.2d 778, 784-85 (Sup. Ct. 1974), *rev'd on other grounds*, 376 N.Y.S.2d 948 (2d Dep't 1975). Those cases instruct that when there are a warranty and a promise to repair, the remedy of first resort is the promise to repair. If that promise is not fulfilled, then the cause of action is the underlying breach of warranty.

replacement obligation anticipates potential defects and specifies the buyer's remedy during the stated period and will not extend commencement of the four year statute of limitations).

Furthermore, in *Jackson v. Eddy's LI RV Center, Inc.*, 845 F. Supp. 2d 523 (E.D.N.Y. 2012), Judge Wexler found that a "repair or replacement" obligation "neither delays accrual nor creates a warranty separate and apart from the product warranty.  Instead, such warranties do nothing more than limit Plaintiff's remedy in the event of breach." *Id.* at 534.

In the present case, like in *Trans–Spec Truck, New England Power, Jackson* and the other cases cited herein, the Court should interpret the POG Remedy Provision as language in the nature of a specification of remedy.  If the Court, however, interprets the POG Remedy Provision as an independent obligation that is breached at any time in the future when the goods malfunction, then the Court opens the door to a statute of limitations of infinite length, accruing only upon discovery at an otherwise unlimited future time, and the buyer's eventual demand for repair.

The Court should interpret a contract so as to give fair meaning to all of the contract's language to reach a practical interpretation that achieves the Parties' reasonable expectations. *Patsis v. Nicolia*, 992 N.Y.S.2d 349, 350 (2d Dep't 2014).  "Because contract interpretation is an exercise in 'common sense' rather than 'formalistic literalism,' 'words should be considered, not as if isolated from the context, but in the light of the obligation as a whole and the intention of the parties as manifested thereby.'" *RCJV Holdings, Inc. v. Collado Ryerson, S.A. DE C.V.*, 18 F. Supp. 3d 534, 545 (S.D.N.Y. 2014) (citing *Duane Reade, Inc. v. Cardtronics, LP*, 863 N.Y.S.2d 14, 19 (1st Dep't 2008)).

Here, the POG Remedy Provision sets forth no definite timeframe on UMSA's obligation to pay the cost of non-conforming conditions.  Therefore, UMSA could breach the POG Remedy

8

Provision at any indefinite time in the future.  Such an analysis allows plaintiffs to be rewarded for "sleeping on their rights."  *See Dincher v. Marline Firearms Co.*, 198 F.2d 821, 823 (2nd Cir. 1952).  One of the key points for statutes of limitation is that they give sellers the ability to close their books on the past at a given point.  *Standard Alliance Indus.,* 587 F.2d at 820.  The Court should interpret the Purchase Order so that the Parties' reasonable expectations will be realized. The Parties did not agree upon an indefinite statute of limitations.  Accordingly, common sense dictates that the Court construe the POG Remedy Provision as a specification of a remedy for failure to conform to a warranty.  The Decision's analysis prevents UMSA from ever closing its books on its potential liabilities under the Purchase Order, which would endure as long as the Bronx-Whitestone Bridge utilizes the materials delivered by UMSA.  If UMSA breached the Purchase Order Warranty, then POG's *remedy* — not a separate promise — was the cost of correcting the non-conforming conditions allegedly caused by UMSA, so long as the lawsuit was initiated within the limitations required under UCC § 2-725(2).

**III.    The Court incorrectly applies a breach of contract analysis to the POG Remedy Provision.**

**A.    Even if this Court finds that UMSA's obligation to pay the cost of correcting non-conforming conditions is not a specification of remedy, a breach of such obligation should be analyzed under UCC § 2-725(2).**

If this Court construes the POG Remedy Provision as a separate contractual obligation, rather than language in the nature of a specification of remedy, then UCC § 2-725(2) must control the Court's analysis.  Any other interpretation would ignore the UCC's definition of express warranties under UCC § 2-313, prior precedent from this Court, as well as that of other New York state and federal courts.

The Court held that POG's Remedy Provision is not an express warranty under the UCC and that the accrual date in UCC § 2-725(2) does not apply.  (Decision at 8-9).  This conclusion

overlooks the UCC's definition of express warranties.  UCC § 2-313 states that "[a]ny affirmation of fact or promise made by the seller to the buyer which *relates to* the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." (emphasis added).  To avoid the statute of limitations under UCC § 2-725, the Decision must rely on the premise that any purported "repair or replacement" obligation does not relate to the quality of the goods.  However, contrary to the Decision, POG's Remedy Provision relates to the quality of the goods.  UMSA promised "to pay for the cost of correcting non-conforming conditions caused by [UMSA]," in other words, defects affecting the quality of the goods as manufactured and delivered.

This Court has treated such promises as express warranties under the UCC when a time frame is expressly provided as to when the seller is required to make repairs or replace defective goods.  *E.g., LILCO v. Transam. Delaval, Inc.*, 646 F. Supp. 1442, 1455-56 (S.D.N.Y. 1986) (treating the breach of a repair and replacement obligation as a breach of an express warranty); *H. Sand & Co., Inc. v. Airtemp Corp.*, 738 F. Supp. 760, 770-71 (S.D.N.Y. 1990) (same), *rev'd on other grounds*, 934 F.2d 450 (2nd Cir. 1991).  *See also Brainard v. Freightliner Corp.*, No. 02-CV-0317, 2002 WL 31207467 at *3 (W.D.N.Y. Oct. 1, 2002) (same).  New York State courts also treat such promises as express warranties under UCC § 2-725(2).  *E.g., Schwatka v. Super Millwork, Inc.*, 965 N.Y.S.2d 547, 550 (2d Dep't 2013) (warranty to repair or replace windows accrued upon delivery); *Gianakakos v. Commodore Home Sys.*, 727 N.Y.S.2d 806, 808 (3d Dep't 2001) (warranty on manufactured home limited to repair or replacement accrued upon delivery of home).  *See also Liecar Liquors Ltd. v. CRS Bus. Computers, Inc.*, 613 N.Y.S.2d 298, 299 (3d Dep't 1994) (cause of action for the breach of a repair and replacement obligation accrued upon delivery); *Shero v. Home Show U.S.A., Ltd.*, 598 N.Y.S.2d 408, 409 (4th Dep't 1993) (same);

10

*Niagara Mohawk Power Corp. v. Ferranti-Packard Transformers, Inc.*, 597 N.Y.S.2d 884, 886-87 (Sup. Ct. 1993) (same).

Here, the Court's treatment of the POG Remedy Provision as a separate obligation from the Purchase Order's underlying warranty must account for the UCC's definition of warranties and New York case law.  To this end, UCC § 2-725(2) establishes that "a breach of warranty occurs when tender of delivery is made . . . ."  UCC § 2-725(2).  The POG Remedy Provision set forth no time frame as to when UMSA's obligation to pay the cost of correcting non-conforming conditions would end.  Hence, pursuant to UCC § 2-725(2), the statute of limitations ran four years after delivery of the goods — no later than August 30, 2010 — making all of POG's claims untimely.

**B.     The Court overlooks the differences between breach of warranty and breach of contract claims.**

The Court incorrectly overlooks the UCC's distinctions between breach of warranty and breach of contract claims, as well as the existing legal framework that governs these claims.  The U.S. Supreme Court, in *East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858 (1986), noted the distinction between a breach of warranty and a breach of contract claim.  The Court stated that rejection and revocation claims are rights that are redressed pursuant to breach of contract theory.  *Id.* at 872.  A claim of a nonworking product is "brought as a breach-of-warranty action.  Or, if the customer prefers, it can reject the product or revoke its acceptance and sue for breach of contract."  *Id.*

As recognized by the U.S. Supreme Court, as well as other state supreme courts,[10] a non-breaching buyer's cause of action and corresponding remedy under the UCC are dictated by whether the buyer has accepted or rejected the goods.

> The UCC recognizes that breach of contract and breach of warranty are not the same cause of action. The remedies for breach of contract are set forth in section 2-711, and are available to a buyer where the seller fails to make delivery. The remedies for breach of warranty are available to a buyer who has finally accepted goods, but discovers that the goods are defective in some manner.

*Sw. Bell Tel. Co. v. FDP Corp.*, 811 S.W.2d 572, 576 (Tex. 1991) (internal quotation marks omitted). Article 2 breach of warranty and breach of contract claims are distinguishable because of their remedial differences: "As comment 1 to UCC § 2-714 explains, 'This section deals with the remedies available to the buyer after the goods have been accepted and the time for revocation of acceptance has gone by.' Thus, damages for breach of warranty are not available to buyers who have revoked acceptance." *Kelly v. Olinger Travel Homes, Inc.*, 117 P.3d 282, 288 (Or. Ct. App. 2005). The New York Court of Appeals also recognized that a buyer's damages stemming from accepted goods "is most naturally understood as a warranty claim." *Bocre Leasing Corp. v. General Motors Corp.*, 84 N.Y.2d 685, 689 (1995).

Here, the Court classifies the purported breach of the POG Remedy Provision as a breach of contract, but then contradicts the differences between breach of contract and breach of warranty, by applying remedies only associated with breach of warranties under UCC § 2-714 to a purported breach of contract claim. The Court cannot avoid the statute of limitations mandated under UCC § 2-725(2) by classifying the purported breach of the POG Remedy Provision as a

---

[10] *Accord Kirby v. NMC/Continue Care,* 993 P.2d 951, 954 (Wyo. 1999) (stating that a buyer who rejects possesses a breach of contract but not a breach of warranty action); *Baker v. Wade*, 949 S.W.2d 199, 201 (Mo. Ct. App. 1997)(rejection and revocation are mutually exclusive of a breach of warranty claim); *Prince v. LeVan*, 486 P.2d 959, 963 (Alaska 1971) (revocation and rejection are to be contrasted with breach of warranty). *See also Stewart–Decatur Sec. Sys., Inc. v. Von Weise Gear Co.*, 517 F.2d 1136, 1139 n. 9 (8th Cir. 1975) (breach of warranty claim can only arise after goods have been accepted and buyer has not rejected goods).

breach of contract claim and at the same time attempt to provide remedies to POG only available under breach of warranty claims.  Such a position is internally inconsistent.  POG has accepted the goods and a purported breach of the POG Remedy Provision should be examined under a breach of warranty analysis.  Therefore, POG's claims are barred by UCC § 2-725(2).

**IV.    Application of UCC § 2-725(1) to UMSA's obligation to pay the cost of correcting non-conforming conditions would still require this Court to start the four-year limitations period on delivery to avoid an indefinite statute of limitations.**

The Decision erroneously applies the future performance exception to POG's breach of contract claim under Count I.  (Decision. at 8).  As the plain language of UCC § 2-725 makes clear, the future performance exception applies only where (1) the claim is for breach of *warranty*, not breach of *contract*; (2) the warranty at issue warrants the performance of the goods; (3) and any guarantee regarding the goods' performance explicitly extends to the future. *See* UCC § 2-725.  Accordingly, the future performance exception does not apply to that portion of Count I of POG's Amended Complaint alleging breach of *contract* because it applies only to claims for breach of *warranty*.  This Court overlooked the plain reading of UCC § 2-725 and effectively applied the future performance exception to POG's breach of contract claim.  In doing so, this Court incorrectly interpreted the *Long Island Lighting* decision by the Second Circuit. The Court's interpretation of the POG Remedy Provision cannot be reconciled with either the language or the spirit of UCC § 2-725.

In *Statler v. Dell, Inc.*, 775 F. Supp. 2d 474 (E.D.N.Y. 2011) Judge Wexler correctly interpreted *Long Island Lighting* by stating that repair obligations can potentially place accrual of a cause of action beyond the date of delivery.  "Such cases, however, either: (1) involve specific contractual obligations that can be deemed to accrue after delivery, or (2) explicitly extend particular obligations beyond the UCC four year period of warranty." *Id.* at 481.  Judge Wexler

cited *Long Island Lighting* as the authority in New York involving specific contractual obligations that accrued after delivery.

> In *Long Island Lighting Co. v. IMO Industries Inc.*, 6 F.3d 876 (2d Cir. 1993), for example, relied upon by Plaintiffs, the Second Circuit held that a claim based upon an express agreement to repair faulty generators *did not accrue, as set forth in the warranty, until the generators were 'in place' — an event that did not occur until years after delivery. Id.* at 890. Similarly in *Shapiro v. Long Island Lighting Company*, 71 A.D.2d 671, 418 N.Y.S.2d 948, 950 (2d Dep't 1979), the Appellate Division held that while a breach of warranty claim should be dismissed as untimely, it also held that an explicit agreement to replace a defective heater for a ten year period allowed that claim to be brought after expiration of the four year period of warranty.

*Id.* at 482 (emphasis added). Judge Wexler reasoned that the "in place" qualification on the repair warranty meant that the repair obligation could not run upon delivery. *Id.*

In like manner, the court in *Flagg Energy Dev. Corp. v. Gen. Motors Corp. Allison Gas Turbine Div.*, No. CV920242198S, 1996 WL 589252 (Conn. Super. Ct. Oct. 3, 1996), *aff'd sub nom. Flagg Energy Dev. Corp. v. Gen. Motors Corp.*, 709 A.2d 1075 (Conn. 1998), also found the "in place" language instructive. Specifically, the *Flagg Energy* court reasoned that the language in the *Long Island Lighting* contract, which only initiated the repair or replace obligation after the equipment was "in place", meant that the parties agreed to delay accrual of such obligation until after delivery. *Id.* at *3-4. The repair and replacement language in *Flagg Energy* was devoid of such "in place" language delaying accrual of the statute of limitations. Therefore, the court rejected the plaintiff's argument that the purchase order's repair or replace warranty breathes life into those which are time-barred. *Id.* at *4.

In the present case, the Purchase Order did not contain any language analogous to the "in place" language found in *Long Island Lighting*; therefore, no reasons exists to delay accrual of the statute of limitations past the date of delivery. Additionally, and unlike *Allen*, the Purchase Order contained no explicit statement of the time period for which UMSA's obligation to repair

14

or replace would remain in effect.  The contract at issue in *Allen* contained a ten year repair warranty.  *Allen*, 913 F. Supp. 2d at 500.  The Purchase Order Warranty contained no such explicit time period.  As previously set forth, all reported cases we have found that examined "repair or replacement" obligations under the lens of a breach of contract or breach of express warranty, have found such obligations to be prospective obligations only when: (1) there is an explicit statement that the seller will repair or replace the goods in the event that a defect becomes apparent, and (2) an explicit statement of the time period for which the seller's obligation to repair or replace exists.[11]  Neither of the two characteristics necessary to establish a prospective obligation are present in this case.  Therefore, the only logical conclusion is that the statute of limitations began to run upon delivery of the goods under the Purchase Order.  Any other interpretation leads to an indefinite statute of limitations.

**V.    Principles of judicial economy warrant certification of this central, dispositive issue for interlocutory appeal.**

However this Court decides this central, dispositive legal issue, the Second Circuit will ultimately need to decide the issue upon a *de novo* review.  This case involves a controlling question of law to which there is a substantial ground for difference of opinion.  *Compare* Decision at 8-10, *with Statler*, 775 F. Supp. 2d at 481-83 *and Jackson*, 845 F. Supp. 2d at 529-34.

---

[11] *See, e.g., Allen*, 913 F. Supp. 2d 490, 500 (S.D. Ohio 2012) (ten year repair warranty on windows); *Cosman v. Ford Motor Co.*, 674 N.E.2d 61, 68 (Ill. App. 1996) (Ford promised to repair defects for six years or 60,000 miles); *Versico, Inc. v. Eng'rd Fabrics Corp.*, 520 S.E.2d 505, 509-10 (Ga. 1999) (ten year warranty to repair roofing materials); *Selby v. Goodman Mfg. Co.*, No. 2:13-CV-2162, 2014 WL 2740317, at *1 (N.D. Ala. June 17, 2014) (limited warranty covered a period of ten years if the goods were registered within sixty days of the original installation otherwise all parts were warranted for a period of five years).  Cases following such logic also hold that in no event will the seller's exposure extend beyond the period to repair or replace that is set forth in the contract in dispute, plus four years.  *E.g., Mydlach v. DaimlerChrysler Corp.*, 875 N.E.2d 1047, 1061 (Ill. 2007).  The present case has no warranty period, so UMSA's exposure cannot exceed four years from the date of delivery, *i.e.*, no later than August 30, 2010.

28 USC § 1292(b) provides for certification of an order for interlocutory appeal when the court determines: "(1) that such order involves a controlling question of law (2) as to which there is a substantial ground for difference of opinion and (3) that an immediate appeal from [that] order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

Additionally, if UMSA's position prevails, POG's last remaining claim will be barred by the statute of limitations under UCC § 2-725, and there would be no need to engage in further motion practice or a trial on the merits. Thus, a determination of this dispositive legal issue will conserve valuable judicial resources by deciding this purely legal issue at the outset. In the absence of an interlocutory appeal, the Court's valuable resources may be wasted deciding the many other issues that would be presented in the event that UMSA's legal position does not turn out to be case dispositive. Accordingly, UMSA respectfully asks that, if the Court does not grant the motion for reconsideration, then alternatively, that the Court certify its decision for interlocutory appeal.

## CONCLUSION

Under New York UCC § 2-725, the statute of limitations began to run on POG's claims upon the delivery of the panels, which occurred — at the latest — in August of 2006. Plaintiff did not file its claim against UMSA within four years of the delivery of the panels, and as such its claims are barred by the statute of limitations. UMSA respectfully requests that the Court grant its Motion for Reconsideration, in part, and dismiss POG's remaining claim with prejudice. In the alternative, UMSA respectfully asks that the Court certify its decision for interlocutory appeal.

16

Dated: February 3, 2015

<div style="margin-left:auto">

**AKERMAN LLP**

*s/ Jeffrey G. Gilmore*

By: _____
Jeffrey G. Gilmore (Admitted *pro hac vice*)
John M. Neary (Admitted *pro hac vice*)
750 9th Street, N.W., Suite 750
Washington, D.C. 20001
Telephone: (202) 393-6222
Fax: (202) 393-5959
E-mail: jeff.gilmore@akerman.com
E-mail: john.neary@akerman.com

Martin Domb
666 Fifth Avenue, 20th Floor
New York, New York 10103
Telephone: (212) 880-3800
Fax: (212) 880-8965
E-mail: martin.domb@akerman.com

*Attorneys for Defendant Usiminas Mecânica S.A.*

</div>

17